Barbara SABOL, Appellee,

v.

John E. SNYDER, Appellant.

No. 74–1178.

United States Court of Appeals,
Tenth Circuit.

Argued Aug. 18, 1975.

Decided Oct. 31, 1975.

Wesley A. Weathers, of Crane, Martin, Claussen, Hamilton & Barry, Topeka, Kan. (Clayton M. Davis, of Davis & Bennett, Topeka, Kan., with him on the brief), for appellant.

Charles S. Scott, of Scott, Scott, Scott & Scott, Topeka, Kan., for appellee.

Before SETH, McWILLIAMS and DOYLE, Circuit Judges.

SETH, Circuit Judge.

Plaintiff, Barbara Sabol, brought suit charging discrimination on the basis of race in violation of 42 U.S.C. §§ 1981, 1983, 1985, and 1986 against defendants, John E. Snyder, Assistant Commissioner, Division of Vocational Education, Department of Education for the State of Kansas; and C. Taylor Whittier, Commissioner of Education for the State of Kansas.

The United States District Court for the District of Kansas sustained a motion to dismiss on behalf of Whittier, finding no evidence to sustain plaintiff's claim against him. The case was tried to the judge, and as against defendant Snyder, the court found discrimination in violation of section 1981 and granted plaintiff a judgment in the amount of $1,760, later amended to $2,475, as actual damages, $1,000 punitive damages, and $1,000 attorney's fees. It is from this judgment that defendant Snyder appeals.

Plaintiff, a black American, is a licensed practical nurse and a registered professional nurse with a Master's Degree in counseling, guidance, and personnel administration. She has an employment background as a nurse, personnel service associate, and instructor. She became aware that the position of Health Occupations Supervisor for the Kansas State Board of Education would be open in July 1970. She accompanied the then occupant of that position, who later recommended plaintiff for the job, to defendant's office to discuss the position. It was the defendant's job to review all applications for the position and recommend to Commissioner Whittier the best qualified applicant. Plaintiff later filed an application for the position, which was publicized in the ordinary course of business by the Department of Education. A closing date for applications was established, and on that date the only qualified applicant for the position was plaintiff. Some nine or ten days thereafter Mr. George Bridges filed an application. On this application, he indicated his first choice to be another section supervisor's position that was also vacant, listing the Health Occupations position as second choice. Mr. Bridges, however, was offered and did accept the position of Health Occupations Supervisor. Plaintiff was notified that the position for which she had applied was filled.

The cutoff or closing date for applications for the position was chosen by the acting personnel director for the Board in the ordinary course of business without consulting either defendant or the Commissioner. Applications received after a cutoff date were sometimes considered and if so were given the same weight as applications filed prior to the deadline. As part of the application process, the personnel director contacted one of plaintiff's former employers, who gave plaintiff a negative recommendation. None of the other references were contacted, including her most recent employer. In contrast, all of Mr. Bridges' previous employers were contacted.

At the time of the Bridges application, he was in the process of receiving his Ph.D. in Education Administration. His employment background included experience in school administration, some of

which involved administration of health-related occupational programs.

Prior to her filing of a formal application, plaintiff was a consultant at a workshop conducted for nurses and nursing students throughout the state by the then Health Occupations Supervisor. This workshop became a source of controversy as a result of complaints from four nurse participants about plaintiff's actions there. Defendant was made aware of these complaints and investigated them. An evaluation of this workshop was also conducted at its conclusion, which indicated majority approval of the workshop.

Within the Kansas State Department of Education, none of the positions for division supervisors, one of which defendant currently occupies, nor those for sectional supervisors under them, the type of position plaintiff was seeking, are now or have ever been held by members of a racial minority. An exception is one of the current section supervisors in the Vocational Education Division, who is an American Indian. Heretofore, supervisors in the Health Occupations section, other than the temporary ones, have been registered nurses or have had extensive experience in the area of health occupations, except for a brief period of time when the supervisor of another section served as supervisor for both sections until the Health Occupations vacancy was filled.

The district court found as a matter of fact that defendant, acting alone and in consort with others, had in bad faith refused to consider plaintiff's application because she was black, and instead recommended a Caucasian less qualified under established job specifications. Defendant's allegation that the position was changing to a broader, more administrative position, and therefore Mr. Bridges' more advanced educational degree and administrative experience made him a better qualified candidate, was rejected by the court. Instead, the court found that, at the time plaintiff first spoke to defendant about the position, defendant indicated that he preferred an

RN, and that a health occupations background was required. Further, the job requirements and qualifications had never been formally changed. In summary, the court classified defendant's excuses as being " . . . a 'cover-up' effort to conceal the real reasons for rejecting plaintiff's application."

As a result of these findings, the court concluded that plaintiff had established a cause of action for discrimination.

Defendant first argues the trial court's findings to be clearly erroneous in their total disregard of the testimony of Commissioner Whittier and plaintiff's former employer, Dr. Sanders. It is the position of defendant that the testimony of these two, being uncontradicted, established defendant's good faith and business justification in not recommending plaintiff for the position.

It is obviously not the function of the appellate court to try the facts or substitute for the trial court in the determination of factual issues. The appellate court does not weigh the evidence presented at trial, but instead only determines its sufficiency to support the findings. *Southwestern Investment Co. v. Cactus Motor Co.*, 355 F.2d 674 (10th Cir.). This narrow scope of review recognizes the value of the trial court's ability to observe the demeanor of the witness while on the stand and thus determine his credibility, a critical feature of trial proceedings absent in appellate review. The trial court here places emphasis on the demeanor of defendant's witnesses which cannot be overlooked.

The testimony of Dr. Sanders was by deposition, and, of course, the trial court could not view his demeanor. The flat allegation of defendant that Dr. Sanders' testimony was totally disregarded had no support in the record before us which shows it was duly presented, and should be discounted. The evidence as presented in the record is sufficient to support the trial court's findings.

Defendant's second point on appeal concerns the introduction of the compila-

**1012**

tion of the workshop evaluations under the business records exception to the hearsay rule. In laying the foundation for this evidence, Mrs. Cobb, the person who made the compilation, does establish the evaluations as part of the customary and usual procedure that follows the holding of a workshop. She was apparently in charge of the workshop. The evaluation was admitted to prove the success of the workshop, and thereby the capabilities of plaintiff, as determined by the opinions of the majority of participants.

■ The Tenth Circuit has previously held that expressions of opinions and conclusions are not always admissible as public records due to the denial of the right of cross-examination. *Franklin v. Skelly Oil Co.*, 141 F.2d 568 (10th Cir.). However, that same case goes on to recognize the trial court as " . . . the first and best judge of whether tendered evidence meets the standard of trustworthiness and reliability which will entitle it to stand as evidence of an issuable fact, absent the test of cross-examination." This again is in an area in which the trial court is given latitude in applying the rules of evidence. The admissibility of the compilation, of course, did not determine the weight it should be given. It was considered along with all other evidence presented at trial when the court made its decision in this nonjury trial.

The final argument on appeal is directed to the trial court's application of the burden of proof. This case was tried prior to the Supreme Court decision in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, in which the Court delineated the burdens for each party in Title VII litigation. The principles enunciated in *McDonnell* have been recognized as applicable to section 1981 actions as well. *Long v. Ford Motor Co.*, 496 F.2d 500 (6th Cir.).

■ It is defendant's contention that the application of the *McDonnell* principles to the fact pattern here would bring about a different result. *McDonnell* re-

quires that to establish a prima facie case of discrimination, the plaintiff show (1) that she is a member of a racial minority; (2) that she applied and qualified for a position for which the employer was seeking applicants; (3) that she was rejected in spite of her qualifications; and (4) that the position remained open and the employer continued to seek applicants. The first two elements are clearly present in our facts. In order to fulfill the last two, plaintiff must have been rejected some time prior to the hiring of Bridges.

■ The arrival of the cutoff date becomes important on these elements. Although the testimony indicates that cutoff dates are not strictly enforced, but are often ignored when no candidates have applied for a vacancy, it is assumed that when a qualified applicant has filed in time, there is no need to extend the period. The trial court found plaintiff to be a qualified applicant. There was, then, no need to extend the period for application. The acceptance of Mr. Bridges' application after the cutoff date can only be interpreted as rejection of plaintiff's application. This rejection, coupled with the acceptance of Mr. Bridges' application indicating the position was still open, satisfies the last two elements in *McDonnell* for a prima facie case.

■ Under *McDonnell* it then is incumbent on the defendant to articulate some legitimate, nondiscriminatory reason for the rejection of plaintiff's application. *See Equal Employment Opportunity Comm'n v. University of New Mexico*, 504 F.2d 1296 (10th Cir.). Here defendant offered a business judgment defense asserting generally that Mr. Bridges was better qualified. The trial court characterized this as a "cover-up" or a pretext. This, to us, is unusually strong terminology which we must take as a rejection of the explanation of defendant's position as a bona fide one. It thus so falls far below what could constitute a "defense" and thus cannot be the articulation of a legitimate, nondiscrimi-

natory reason for the employer's rejection.

The case is, of course, basically a fact question tried to the court. The legal issues presented on appeal advance no basis for reversal.

Affirmed.