Gilbert RODGERS, Plaintiff,

v.

**PENINSULAR STEEL COMPANY,**
Defendant.

No. C77–930.

United States District Court,
N. D. Ohio, E. D.

June 24, 1982.

Eugene Sidney Bayer, Roy M. Kaufman, Cleveland, Ohio, for plaintiff.

Donald F. Woodcock, Michael A. Pohl, Calfee, Halter & Griswold, Cleveland, Ohio, for defendant.

## ORDER

BATTISTI, Chief Judge.

Plaintiff Gilbert Rodgers brought suit in this Court alleging instances of employment discrimination cognizable under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. He invoked jurisdiction without opposition pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202. Plaintiff alleged essentially that defendant Peninsular Steel Company ("the Company") had discriminated against him in its hiring and promotion of a foreman in 1973 and a working foreman in 1974, and that he had endured discriminatory discipline and suspension for his failure to wear safety glasses on the job. Defendant now brings a motion for summary judgment, arguing that plaintiff's Title VII allegation concerning the 1973 incident is barred by the statute of limitations; that the allegations of discriminatory hiring and promotion fail to make out the necessary prima facie case of discriminatory treatment under either Title VII or 42 U.S.C. § 1981; and that, for various reasons, the allegation of discriminatory harassment on the job fails to raise a genuine issue. The Court today concludes that defendant's limitations argument is meritorious, and that plaintiff indeed fails to articulate a prima facie case for the discriminatory promotion of a working foreman in 1974. Accordingly, the Court grants defendant's motion to the extent that it restricts the claim of discriminatory promotion in 1973 to plaintiff's 42 U.S.C. § 1981 allegation, and dismisses the 1974 discriminatory promotion claim under both statutes. In all other respects defendant's motion is hereby denied.

The essential facts of this controversy may be summarized as follows. Plaintiff is a black male who commenced work with the Company in April of 1969. He was employed successively as a day laborer and as a saw operator—both positions of a manual nature. Deposition of Gilbert Rodgers, 6–8. On July 9, 1973, defendant hired a white male with no prior relationship to the Company as a foreman. The foreman position was supervisory in nature and provided a higher salary than plaintiff enjoyed under his then-existing classification. Deposition, 30–31; Defendant's Answers to Interrogatories, 1. Plaintiff never applied for foreman but alleges that defendant never notified its own employees of the vacancy. Deposition 30.

During the next year, in 1974, the Company posted a vacancy for lead man. The lead man is a "production worker" and not a part of management. Deposition, 25. One of the applicants for lead man, Jose Gonzales, was a Hispanic male with greater seniority and experience than plaintiff. Deposition, 25–26. As the union steward, plaintiff was therefore obligated per union contract to grieve for Mr. Gonzales to obtain the position. Affidavit of Gilbert Rodgers, 1. Plaintiff himself did not apply for lead man. Upon the bidding for lead man, the Company eliminated the vacancy and posted a new notice for working foreman. Deposition, 26. The working foreman position was essentially supervisory but entailed occasional manual labor as well; like the foreman position, it offered a higher salary than did plaintiff's post as saw operator. Deposition, 23 and 31; Defendant's Answers to Interrogatories, 1. Hiring for working foreman was apparently not regulated by union contract, and the

management could hire at will. Deposition, 26. Mr. Gonzales was again among the applicants for this position; plaintiff, on the other hand, again failed to apply. Deposition, 26. Defendant subsequently promoted a white male with five months' seniority in the Company to be working foreman. Defendant's Answer to Interrogatories, 1.

Later in 1974, plaintiff was disciplined and suspended for refusing to wear safety glasses while on the job. Without disputing his failure to wear the glasses, plaintiff alleges that three white employees of the Company also failed to wear them, but nonetheless were not subjected to disciplinary action. Affidavit, 1.

Plaintiff filed charges concerning alleged discrimination in the two hiring and promotion incidents with the Equal Employment Opportunity Commission ("the EEOC") on August 3, 1974. Deposition, Plaintiff's Exhibit 1. He appears to have filed with the Ohio Civil Rights Commission at about the same time. Deposition, Plaintiff's Exhibit 1; Deposition, 37. The EEOC found reasonable cause to believe that defendant had engaged in unlawful employment practices which discriminated against black and Spanish-surnamed workers as a class. Plaintiff's Reply to Defendant's Motion, Exhibit A. Following the failure of its efforts at conciliation with defendant, the EEOC issued plaintiff a right to sue notice on June 24, 1977. Deposition, Plaintiff's Exhibit 2. Suit was then filed in this Court on August 26 of that year.

Plaintiff filed a grievance concerning the safety glasses incident with his union, the International Association of Bridge, Structural, and Ornamental Iron Workers, Local 468, at some point in 1974. Deposition, 20. The grievance was processed and appealed according to the procedure authorized in the collective bargaining agreement between the union and defendant. Ultimately, however, the union refused to take it to arbitration. Deposition, 21–22.

## I.

At the outset, the Company argues that plaintiff's Title VII allegation concerning the 1973 incident is barred by the statute of limitations. Title 42 U.S.C. § 2000e–5(e) expressly requires that charges be filed with the EEOC within 300 days after the alleged discriminatory employment practice, in cases where the plaintiff has initially instituted proceedings with the relevant state or local agency. Plaintiff apparently concedes, as he must, that he failed to satisfy the 300-day filing requirement. The 1973 incident occurred on July 9, 1973; plaintiff filed with the EEOC on August 3, 1974. Defendant's Answers to Interrogatories, 1; Deposition, Plaintiff's Exhibit 1. Accordingly, plaintiff's Title VII allegation concerning this incident is barred by the statute of limitations.

Plaintiff also alleges, however, that the Company's hiring and promotion of a foreman in 1973 violated his civil rights under 42 U.S.C. § 1981. An action under that section is not barred by an employee's failure to pursue his EEOC remedies in a timely fashion. *Long v. Ford Motor Co.*, 496 F.2d 500, 503–04 (6th Cir. 1974); *Mason v. Owens-Illinois, Inc.*, 517 F.2d 520, 522 (6th Cir. 1975).

Title 42 U.S.C. § 1981 itself has no specifically stated or otherwise relevant federal limitations period. The controlling period for a cause of action under this statute is ordinarily the most appropriate one provided by state law. In actions brought in the federal district courts in Ohio under 42 U.S.C. § 1981, the applicable statute of limitations is Ohio Rev.Code Ann. § 2305.07 (Page), which provides that an action upon a liability created by statute must be brought within six years from the accrual of the cause of action. *Mason v. Owens-Illinois, Inc.*, 517 F.2d at 522. Plaintiff filed his cause in this Court in 1977, well within the six-year period. Thus plaintiff's 1973 allegation of employment discrimination survives within the ambit of 42 U.S.C. § 1981.[1]

---

1. Save for the issue discussed above, the elements of an employment discrimination case

under 42 U.S.C. § 1981 are the same as those

## II.

The Company next argues that plaintiff's allegation concerning the 1973 incident fails to establish a prima facie case of employment discrimination. The basic prerequisites for such a case are (i) that plaintiff belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that he was rejected despite his qualifications; and (iv) that the position remained open after his rejection, and the employer continued to seek applicants from people with his qualifications. *McDonnell Douglas v. Green*, 411 U.S. at 802, 93 S.Ct. at 1824. Mr. Rodgers did not apply for the 1973 position. As defendant concedes, however, this does not necessarily doom plaintiff's claim. The Supreme Court has established an alternative prima facie case for non-applicants. Where a plaintiff has failed to apply, the Court requires him to satisfy an initial burden of demonstrating that his application would have been futile. *International Brotherhood of Teamsters v. United States*, 431 U.S. at 367–68, 97 S.Ct. at 1870–71. Specifically, the plaintiff must bring forth evidence to show that he would have applied but for discrimination, and that he would have been discriminatorily rejected had he applied. *International Brotherhood of Teamsters*, 431 U.S. at 368 n. 52, 97 S.Ct. at 1871 n. 52.

Defendant argues that this plaintiff has produced no evidence of his desire to apply for foreman or his qualifications for the position, and that therefore plaintiff fails to

carry his initial burden of proof. The argument is without merit. An analysis of the circumstances reveals that the case at bar presents an entirely distinguishable situation from *Teamsters* for which the federal courts would and do permit a different prima facie case to be made.

The crucial factor in the *Teamsters* formulation was that the plaintiff in that case alleged that he had been *deterred* from applying for the position in question because discrimination would have rendered it futile for him to do so. In refusing to enact an automatic bar from Title VII relief for all plaintiffs who had not applied, the Court reasoned:

> The denial of Title VII relief on the ground that the claimant had not formally applied for the job could exclude from the Act's coverage the victims of the most entrenched forms of discrimination. Victims of gross and pervasive discrimination could be denied relief precisely because the unlawful practices had been so successful as totally to deter job applications from members of minority groups.

*International Brotherhood of Teamsters v. United States*, 431 U.S. at 367, 97 S.Ct. at 1871.

Although the Court thus opened the courthouse door to the nonapplicant, it nevertheless required him to make a preliminary showing of discrimination. Having alleged his deterrence from applying on the basis of the employer's discriminatory practices, it was then necessary in effect for

---

under Title VII. *Long v. Ford Motor Co.*, 496 F.2d 500 at 505–06; *Sabol v. Snyder*, 524 F.2d 1009, 1012 (10th Cir. 1975). The two cases just cited discuss the 42 U.S.C. § 1981 elements in language borrowed directly from the landmark decision of *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Long* and *Sabol* were decided prior to the Supreme Court's eventual elaboration of those elements and their alternatives in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

This Court finds no reason to believe that the two circuit courts deliberately restricted their definition of the § 1981 elements to the initial Title VII formulation of *McDonnell Douglas v. Green*. Rather, the two courts appear merely to have identified the requirements of a § 1981 lawsuit in the employment discrimination context with the Title VII requirements as they then existed. The Title VII requirements having since been further delineated, this Court sees fit to determine plaintiff's § 1981 cause of action concerning the 1973 hiring according to the full scope of the Supreme Court's Title VII jurisprudence.

such a plaintiff to substantiate this allegation. The plaintiff needed to show prima facie that he would have applied for the relevant position had it not been for those practices. *International Brotherhood of Teamsters v. United States*, 431 U.S. at 368, 97 S.Ct. at 1871. In meeting this burden, he essentially bridges the gap between applicant and non-applicant, and attains the presumption accorded the former upon fulfillment of the *McDonnell Douglas* prima facie case. *Id.*

The present controversy is completely different. Here, in contrast to *Teamsters*, the plaintiff alleges no awareness of a job opportunity which existed but which was illegally deterred. On the contrary, according to Mr. Rodgers, the discriminatory practice prevented even the awareness of the opportunity. The Company allegedly did not inform its own employees of the vacancy. Deposition 30; Affidavit, 1. It is uncontested that the Company then went outside the organization to hire a white man for the foreman position.

Application of the *Teamsters* prima facie test, therefore, would be inappropriate and unfair. This Court will not require plaintiff to demonstrate his interest in the 1973 vacancy at the time it arose, when the alleged discriminatory practice of defendant made it unreasonable for him to have done so. To paraphrase the language, cited above, which the Supreme Court enlisted in support of its own reasoning: "Victims of gross and pervasive discrimination could [otherwise] be denied relief precisely because the unlawful practices had been so successful as totally to [prevent] job applications from members of minority groups." *International Brotherhood of Teamsters v. United States*, 431 U.S. at 367, 97 S.Ct. at 1871.

In a more general sense, a rote and rigid imposition of the *Teamsters* test would constitute a glaring departure from the Supreme Court's own Title VII jurisprudence. The Court has repeatedly emphasized that a plaintiff's prima facie burden in employment discrimination cases must be tailored to the requirements of the circumstances.

In its initial articulation of the prima facie case in *McDonnell Douglas*, the Court admonished: "The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from [plaintiff] is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas v. Green*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13. The Justices have cited this footnote again and again to reiterate the need for flexibility on the part of the federal courts. *See International Brotherhood of Teamsters v. United States*, 431 U.S. at 358, 97 S.Ct. at 1866; *Furnco Construction Corp. v. Waters*, 438 U.S. at 575–76, 577, 98 S.Ct. at 2948–49 ("The method suggested in *McDonnell Douglas* ... was never intended to be rigid, mechanized, or ritualistic."); *Texas Department of Community Affairs v. Burdine*, 450 U.S. at 253–54 n. 6, 101 S.Ct. at 1093–94 n. 6. What is required for *any* expression of the prima facie case must be the offering of evidence sufficient "to create an inference that an employment decision was based on a discriminatory criteria illegal under the Act." *International Brotherhood of Teamsters*, 431 U.S. at 358, 97 S.Ct. at 1866; *Furnco Construction Corp. v. Waters*, 438 U.S. at 576, 98 S.Ct. at 2949. And the inference is created only because sensible people can presume the otherwise unexplained decision of the defendant to have been "more likely than not based on the consideration of impermissible factors." *Furnco Construction Corp. v. Waters*, 438 U.S. at 577, 98 S.Ct. at 2949.

The precise circumstance alleged in this case—the failure to be notified of a vacancy—appears to be rare. At least one federal district court has applied the logic of the Supreme Court to this situation, however. In *Curran v. Portland Superintending School Committee*, 435 F.Supp. 1063 (D.Me. 1977), a female plaintiff claimed that the employer failed to notify her or other qualified female employees when a vacancy arose. The employer then allegedly offered the position privately to a male with inferior job qualifications. *Curran v. Portland Superintending School Committee*, 435 F.Supp. at 1070. It was uncontested that

the plaintiff never formally applied. Nevertheless, the court held that she had set forth a prima facie case under Title VII. The plaintiff's failure to apply could not prevent her challenge to the defendant's employment practices, where her contention was that those very practices made it impossible for her to apply. *Curran v. Portland Superintending School Committee*, 435 F.Supp. at 1072. *See also Peltier v. City of Fargo*, 396 F.Supp. 710, 720 (D.N.D.1975), *rev'd on other grounds*, 533 F.2d 374 (8th Cir. 1976), and *Harris v. White*, 479 F.Supp. 996, 1008 (D.Mass.1979), both of which endorsed the same reasoning within the ambit of a standing argument.

■ In the controversy at bar, plaintiff (1) alleges in a sworn affidavit that defendant failed to notify its own employees of the 1973 vacancy; (2) asserts without contradiction that defendant went outside the enterprise to hire a white man for the vacancy; and, contrary to defendant's assertion, (3) provides documentary evidence of his own work history and qualifications. Plaintiff's Reply to Defendant's Motion, Exhibit C; Deposition, 6–10. This Court now holds that these three factors cumulatively satisfy the prima facie burden of production for plaintiff in the present case. Enunciation of these factors serves the same function for Mr. Rodgers that *Teamsters'* prima facie formula served the plaintiff in that case. In other words, where the *deterred* non-applicant can restore himself to the status of an applicant by showing that he would have applied and would have

been rejected, *International Brotherhood of Teamsters v. United States*, 431 U.S. at 368, 97 S.Ct. at 1871, here the *non-informed* non-applicant has shown that the failure to notify him was improper, and that he would have been interested had he been notified. He thereby attains the presumption of the applicant. To require any more of him would be to demand the unreasonable. With the three factors cited above, plaintiff has created an inference that the Company's 1973 employment decision was based upon a discriminatory criterion. *Id.* at 358, 97 S.Ct. at 1866.[2]

In attempting to rebut this inference, defendant labors under a fundamental error. Defendant characterizes Mr. Rodgers' case as a "pattern and practice" suit. Defendant's Motion for Summary Judgment, 7. In such a suit, a plaintiff carries an initial burden of demonstrating the employer's regular procedure or policy of unlawful discrimination. The burden then shifts to the employer to defeat the prima facie showing by demonstrating that the plaintiff's proof is "inaccurate" or "insignificant." *International Brotherhood of Teamsters v. United States*, 431 U.S. at 360, 97 S.Ct. at 1861. This defendant accordingly attempts to prove that plaintiff's allegations are "insignificant." As the argument runs, the relatively small work force of the Company (twelve), the even smaller number of black employees (two), and the minimal number of relevant employment decisions (also two) preclude conclusions of a "pattern or practice" of any sort. Defendant's Motion for Summary Judgment, 8–10. De-

---

**2.** The Court should not be construed to have accepted plaintiff's demonstration of work history and qualifications as having *proven* his fitness for the 1973 foreman opening. Rather, the Court conceives that plaintiff's documentation provides an acceptable presumption of fitness for foreman, as that position is depicted in the evidence presented. Deposition, 30–31; cf. Deposition, 22–23. *See International Brotherhood of Teamsters v. United States*, 431 U.S. at 369 n. 53, 97 S.Ct. at 1872 n. 53. (The non-applicant "must bear the burden of coming forward with the basic information about his qualifications that he would have presented in an application.")

In its response to plaintiff's interrogatories, defendant contented itself with a bare assertion

of Mr. Rodgers' lack of qualifications, and a subjective and undifferentiated recitation of the factors it used to measure an individual's fitness for foreman. Defendant's Answers to Interrogatories, 6. The Court has no clearer basis upon which to evaluate plaintiff's curriculum vitae. Certainly plaintiff himself cannot be charged with remedying this deficiency; notice of the vacancy and the relevant criteria for promotion were never promulgated by the Company. In short, the Court is satisfied only that plaintiff has come forward with a prima facie case. Defendant's further elaboration and specification of Mr. Rodgers' lack of qualifications, of course, may potentially rebut his presumption at the trial stage.

fendant also argues that its promotion of two minority employees to supervisory positions undercuts any discriminatory "pattern" which this Court might find. *Id.* at 11–12.[3]

The Court is convinced, to the contrary, that the present controversy consists of a suit by Gilbert Rodgers to redress incidents of employment discrimination allegedly inflicted upon him *personally.* The Court finds little support for defendant's "pattern or practice" characterization. Apart from an essentially peripheral request for injunctive relief to protect other minority employees, Complaint, 2, the complaint is phrased entirely in terms of three discrete allegations of injury to plaintiff. Defendant itself has summarized the lawsuit in just this way. Defendant's Motion for Summary Judgment, 2. The procedure undertaken by the EEOC in this matter—specifically, the Commission's attempt at conciliation between the parties—is also indicative of an individual grievance, rather than a systemic one. *EEOC v. Continental Oil Co.,* 548 F.2d 884, 887 (10th Cir. 1977).

To rebut the prima facie burden carried by the plaintiff in a suit to vindicate *individual* instances of employment discrimination, an employer must "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824; *Furnco Construction Corp. v. Waters,* 438 U.S. at 578, 98 S.Ct. at 2950. "The defendant need not persuade the court that it was actually motivated by the proffered [reason] . . . It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Texas Department of Community Affairs v. Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094. The explanation must be legally sufficient to justify a judgment for defendant. *Id.* at 255, 101 S.Ct. at 1094. And even a successful rebuttal on the employer's part does not, of course, demonstrate a *conclusive* absence of employment

discrimination; it merely shifts the burden back upon the plaintiff to show that the employer's proffered reason was pretextual. *Id.* at 255–56, 101 S.Ct. at 1094–95.

In this case, of course, plaintiff does not allege that he was rejected, but rather that he was prevented from applying at all. The burden of rebutting plaintiff's prima facie case must therefore be phrased slightly differently. Defendant must articulate some legitimate, nondiscriminatory explanation for the three incidents, specifically, here, the hiring of an outside white foreman in 1973.

Hence defendant's refutation of a "pattern or practice" of discrimination is somewhat misdirected. Defendant's data concerning the size of the work force, its minority population, the number of relevant employment decisions, and the subsequent promotion of minority employees provides no legitimate, nondiscriminatory explanation for the Company's treatment of Mr. Rodgers in 1973. While such statistics may be of some probative value in explaining the motivation of an employer, *Furnco Construction Corp. v. Waters,* 438 U.S. at 580, 98 S.Ct. at 2951, they do not constitute in themselves a rationale for the hiring methodology employed here. The Company has presented no justification for the non-notification of its own employees and the private solicitation of an outside foreman to supplant plaintiff's suggestion of racial discrimination. Defendant's arguments raise no genuine issue of fact and are legally insufficient to justify a judgment in its favor. *Texas Department of Community Affairs v. Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094. The arguments *a fortiori* represent an inadequate foundation for summary judgment at this stage.

In short, plaintiff has made out a prima facie case of employment discrimination under 42 U.S.C. § 1981 for the 1973 foreman position. Defendant's arguments concerning the limited size of the work force, the small number of relevant employment deci-

---

**3.** Defendant attempts in addition to characterize plaintiff's allegations as "inaccurate". Defendant's Motion for Summary Judgment, 8.

The Company's arguments on this score have been discussed and dismissed by the Court within this section of the order.

sions, and the subsequent promotions of minority employees do not constitute a legitimate nondiscriminatory explanation for the Company's hiring of a white foreman from outside the work force. Defendant has not rebutted plaintiff's prima facie case and *a fortiori* is not entitled to summary judgment on the 1973 allegation.[4]

### III.

■ Defendant does not challenge Mr. Rodgers on statute of limitations grounds concerning the promotion of a white working foreman with lesser seniority in 1974. The Company's discussion of this allegation is rather a further elaboration of the argument put forward in the preceding section of this order. Again in 1974, plaintiff failed to apply for the relevant employment opportunity; this time, asserts defendant, additional circumstances are present which preclude any finding of a prima facie case of employment discrimination. The Court finds defendant's argument persuasive.

Plaintiff's own deposition reveals the distinctions between the 1973 and 1974 incidents. As the Court reads the transcript, plaintiff's fellow minority employee, Mr. Gonzales, applied for working foreman after the Company had eliminated the bidding for lead man. Deposition, 26. The new vacancy for working foreman appears to have been posted on the Company bulletin board. *Id.* Nevertheless, plaintiff did not apply. Plaintiff conceded that Mr. Gonzales enjoyed greater seniority and experience than he for the working foreman position, and concluded, "He [Mr. Gonzales] should have gotten the job." *Id.* at 27. At this point, according to plaintiff, the Company went on to eliminate the bidding for this position, and substituted its own (white) candidate for the post. *Id.*[5]

Plaintiff's challenge to the Company's promotion of a working foreman in 1974 therefore differs from his challenge to the 1973 vacancy in two crucial respects. First, although plaintiff claims to have been uninformed of the vacancy, Affidavit, 1, his ignorance cannot be attributed to the malfeasance of defendant. Mr. Gonzales, another minority employee, was sufficiently aware to tender a bid for the position. Any inference of discriminatory animus in the non-notification of plaintiff is therefore lifted.

Second, the 1974 incident is not limited to a bare record of qualifications from which this Court could presume plaintiff's interest in the vacancy at that time. Instead, plaintiff conceded Mr. Gonzales' greater seniority and experience for working foreman— the same concession which dissuaded him

---

4. The Court notes in addition plaintiff's contention that the Company's promotion of the two minority employees occurred only after plaintiff's initiation of his grievance before the Ohio Civil Rights Commission. The contention appears to be substantiated in the documentary evidence presented. Defendant's Answers to Interrogatories, 5. Although recognizing the potential force of plaintiff's position, the Court finds it unnecessary to apply it to defendant's rebuttal arguments at this stage. Defendant is unable to prevail on its motion for summary judgment concerning the 1973 incident in any event.

5. The text of the deposition, in pertinent part, reads as follows:

"A. Upon the bidding [for lead man], the lead man job was pulled from the board *and working foreman put up there* [emphasis added]. This automatically blocked any minorities, including myself.

Q. ... Just because the position was advertised for working foreman, you made the statement that minorities are automatically exempted or precluded from fulfilling that position. What caused you to make that statement?

A. One of the people that bid it was Jose Gonzales. He is a minority.

Q. What minority is he?

A. If I'm not mistaken, he is Puerto Rican, and he had more seniority and experience than I did. He should have gotten the job. It was pulled down upon the bidding going in and working foreman came in.

Q. Is it your statement because Gonzales didn't get the position of working foreman, the company denied you a position of working foreman, but you never even applied for the position of working foreman?

A. Let's say this is one element.

Q. But your testimony still is you never applied for the position of working foreman yourself?

A. That's right."

Deposition, 26–27.

from applying for lead man. Deposition, 25–26. No presumption of interest on plaintiff's part can be maintained from a record where plaintiff has not only not expressed such an interest but *a fortiori* has provided such a strong suggestion of lack of interest.

In the prior section of this order, the Court recognized plaintiff's capacity to make out a prima facie case of employment discrimination without either having applied or been improperly deterred. The Court could presume plaintiff's interest in and fitness for the relevant position from the evidence of his non-notification; of the Company's apparently irregular hiring for the position; and of plaintiff's qualifications themselves. Two of these factors are considerably altered in the 1974 situation. The Court cannot excuse plaintiff's failure to apply where another minority employee had no difficulty applying. Alternatively, the Court cannot presume plaintiff's interest in the position where such interest was not expressed and lack of interest was strongly suggested. Either factor would suffice to defeat plaintiff's prima facie case for the 1974 allegation under Title VII and 41 U.S.C. § 1981. Accordingly, defendant's motion for summary judgment concerning the 1974 working foreman promotion must be granted.[6]

## IV.

The final issue in this controversy concerns plaintiff's allegation of discriminatory harassment for not wearing safety glasses on the job, while the Company declined to discipline three named white employees for the same offense. Defendant's objections to the allegation are two-fold: (1) that plaintiff's admission of a non-discriminatory denial of the grievance on the part of his union "strongly suggests" that defendant's conduct did not violate Title VII or 42 U.S.C. § 1981, Defendant's Motion for Summary Judgment, 13, and (2) that plaintiff's attempt to assert the same claim here in federal court is somehow invalid. *Id.* at 13–14. Neither objection in any way compromises the soundness of the allegation at this point.

Far from constituting a suggestion on the merits of this allegation, the union's admittedly non-discriminatory denial of plaintiff's grievance, Deposition, 22, sheds no light on the allegedly discriminatory nature of this incident one way or the other. The former event may well be entirely irrelevant to the latter. Certainly defendant makes out no compelling relationship between the two. As for the second objection, defendant is simply mistaken on the availability of an independent remedy in federal court following a plaintiff's exhaustion of contractual procedures. The law imposes no requirement that plaintiffs such as Mr. Rodgers elect one remedy or the other. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *Lyght v. Ford Motor Co.*, 643 F.2d 435, 438–39 (6th Cir. 1981). The presence of this allegation in federal court at this point is therefore entirely appropriate. Thus summary judgment for defendant based upon this claim of discriminatory treatment on the job must be denied.

In conclusion, the Court grants defendant's motion to the extent that it restricts plaintiff's 1973 claim of discriminatory promotion to a 42 U.S.C. § 1981 allegation, and dismisses the 1974 discriminatory promotion claim in its entirety. Summary judgment concerning the claim of discriminatory treatment on the job in 1974 is hereby denied.

IT IS SO ORDERED.

---

**6.** Although the parties have not discussed the 1974 incident in terms of standing, the same testimony suggests dismissal of this allegation under that rubric as well. If Mr. Gonzales possessed superior qualifications for working foreman, the alleged discriminatory denial of his application harmed him and not plaintiff. Plaintiff would seem to have suffered no "injury in fact" from the course of defendant's conduct. *See Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 152–53, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). Plaintiff's assertion that Mr. Gonzales' withdrawal of his own complaint "places plaintiff next in line for a promotion," Plaintiff's Reply to Defendant's Motion, 2, is an untenable basis for standing in the federal courts.