JACQUELINE E. WELFORD *vs.* NANCY M. NOBREGA &
others[1]
(and a companion case[2]).

Middlesex. September 9, 1991. - February 18, 1992.

Present: WILKINS, NOLAN, O'CONNOR, & GREANEY, JJ.

*State Lottery Commission. Lottery. Practice, Civil*, Summary judgment.
*Administrative Law*, Agency's interpretation of statute. *Jurisdiction*,
Long-arm statute.

In an action seeking a declaration that the plaintiff's former husband was
the sole owner of a winning State lottery ticket, the uncontroverted affi-
davits, when considered with G. L. c. 10, § 28, as interpreted by the
State Lottery Commission's practices and regulations, 961 Code Mass.
Regs. §§ 2.00 et seq., affirmatively established for summary judgment
purposes that the former husband and another person had purchased
the lottery ticket for themselves as co-owners pursuant to their prior
understanding, that they were entitled to share equally in the proceeds,
and that a trust they had established for their benefit and to which they
had assigned their rights to lottery payments was valid and enforceable.
[803-805]

The plaintiff in a civil action failed to establish, for jurisdictional purposes,
that a certain bank had transacted business in Massachusetts within
the meaning of the long-arm statute, G. L. 223A, § 3 (*a*). [805-806]

COMPLAINT for modification of a judgment of divorce, filed
in the Middlesex Division of the Probate and Family Court
Department on February 13, 1987.

A motion for leave to intervene was heard by *John S.
Macdougall, Jr.,* J.

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 23, 1987.

[1]Gerald J. Nobrega, Thomas A. Wirtanen, Connecticut River Bank, and
the State Lottery Commission.

[2]Nancy M. Nobrega *v.* Gerald J. Nobrega.

A motion to dismiss as to the defendant Connecticut River Bank was heard by *Robert W. Banks*, J., and the case was heard by *Katherine Liacos Izzo*, J., on a motion for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*David L. Chamberlain* for Jacqueline E. Welford.

*John C. Sandelli* for Gerald Nobrega.

*Thomas A. Wirtanen* for Nancy M. Nobrega & another.

*Gwendolyn R. Tyre*, Assistant Attorney General, for State Lottery Commission.

*Laurence Field* for Connecticut River Bank.

O'CONNOR, J. These two related cases are before this court for appellate review following our allowance of the plaintiff Jacqueline Welford's application for further appellate review. The principal dispute concerns ownership of a 1986 winning Megabucks lottery ticket worth $1,690,500 to be paid at the rate of $84,525 per year before taxes for twenty years. Welford and Gerald J. Nobrega (Gerald) claim that they co-owned the ticket and therefore are entitled to share equally in the proceeds. Nancy Nobrega (Nancy), who was divorced from Gerald in 1975 and is the mother of their four children, says that Gerald was the sole owner of the ticket.

Nancy filed a complaint in the Probate and Family Court seeking modification of outstanding alimony and support orders against Gerald. She contended that Gerald was the sole owner of the ticket. A judge issued temporary restraining orders requiring portions of the winnings to be placed in a client escrow account held by Nancy's attorney, Mr. Thomas A. Wirtanen, who is a defendant in the Superior Court case. The State Lottery Commission, which also is a defendant in the Superior Court case, complied with the judge's order and paid $30,160 to Mr. Wirtanen. The lottery commission paid the balance of the 1987 proceeds to the Superior Court defendant Connecticut River Bank as trustee under a trust established by Welford and Gerald. Welford moved to intervene in the Probate and Family Court proceedings involving

Nancy and Gerald, but her motion was denied. Welford appeals from that order.

Prior to her unsuccessful attempt to intervene in the Probate and Family Court divorce action between Nancy and Gerald, Welford commenced the instant Superior Court action against Nancy, Mr. Wirtanen, Gerald, the lottery commission, the trustee bank, and others who are no longer parties. The primary relief Welford seeks in the Superior Court action is a declaration that Welford was a one-half owner of the lottery ticket and is entitled to one-half of the proceeds. The Connecticut River Bank, claiming not to be subject to the court's jurisdiction, moved for dismissal of the action as to it. A judge allowed that motion and Welford appeals.

Subsequently, on October 28, 1987, another judge in the Superior Court allowed a motion for a summary judgment filed by Nancy and Mr. Wirtanen. The judge reasoned that Gerald was the sole owner of the ticket, that the trust purportedly established by Welford and Gerald was unlawful and a nullity, and that therefore Welford had no legal interest in the lottery ticket or lottery proceeds. Thereafter, the parties filed a plethora of papers that contributed little but confusion. One filing was Welford's motion for final judgment in her favor declaring Welford to be one-half owner of the ticket and proceeds. Also, Gerald filed a motion to vacate the summary judgment previously entered and a motion for the entry of summary judgment in his and Welford's favor declaring that Welford and he were co-owners of the ticket and its proceeds. Finally, in January, 1989, the same judge who had ordered summary judgment favoring Nancy and Mr. Wirtanen in October, 1987, considered numerous motions to clarify, modify, or amend her order. In a memorandum the judge described the procedural history of the case in this way: "All parties, and particularly the plaintiff have flooded this court with many motions, affidavits and memoranda (138 in Number according to the docket). Over a period of more than a year numerous lengthy hearings have been held. Many of the plaintiff Welford's motions are without merit and will not be considered by this court for the

reason that they are redundant, incomprehensible, or immaterial." The judge's observations were well made. The judge then ordered that summary judgment enter for Nancy and Mr. Wirtanen "pursuant to [the court's] prior order granting summary judgment to them." The judge denied Welford's motion to vacate prior judgments and to order judgment in her favor, denied Gerald's motion for summary judgment, declared that "winnings from Gerald Nobrega's winning Megabucks ticket [are] the sole property of Gerald Nobrega, and as his property these winnings are thereby subject to orders of the Probate Court or any other court," and ordered the lottery commission to pay all winnings to Gerald "subject to any lien, attachment or order of the Probate Court." Welford and Gerald appeal from the orders and judgment unfavorable to them.

The several issues raised by these appeals were decided by the Appeals Court. *Welford* v. *Nobrega*, 30 Mass. App. Ct. 92 (1991). The Appeals Court concluded as follows: "[T]he judgment entered in the Superior Court in favor of Nancy must be reversed. A new judgment is to be entered on the motions for summary judgment filed by [Welford] and Gerald declaring [Welford] and Gerald co-owners in equal shares of the prize money and that the trust they executed for their own benefit is valid and enforceable in accordance with its terms. All other claims, counterclaims and cross-claims are denied as moot or not meritorious. [Welford's] appeal from the denial of her motion to intervene in the Probate Court proceedings brought by Nancy is dismissed as moot." *Id.* at 105. We agree with the Appeals Court's conclusions and we substantially agree with its reasoning.

Neither Nancy nor Mr. Wirtanen filed an affidavit in support of their motion for summary judgment or in opposition to Welford's similar motion. The only source of facts available to the Superior Court judge for summary judgment purposes in October, 1987, was an uncontroverted affidavit of Welford filed with her complaint. We summarize that affidavit below. When the judge ruled as to summary judgment again in January, 1989, there also was available an affidavit

made and filed by Gerald in November, 1987, depositions of lottery commission employees, and a "stipulation" signed by the lottery commission stating that the lottery commission routinely acknowledged joint ownership of winning lottery tickets but, for its own purposes, formally recognized only one person as the winner when it paid the proceeds.[3] Gerald's affidavit generally tracked Welford's. It asserted that Gerald had purchased the lottery ticket for Welford and himself and with the understanding that they would share equally in any prize money.

According to the affidavits, Welford devised a set of numbers to use in purchasing Massachusetts Megabucks tickets based on the ages of her children, her own age, and her number in a "pool" at her place of employment. Each week between approximately October, 1985, and March, 1986, Welford gave Gerald a dollar to buy a Megabucks ticket with these numbers. She and Gerald orally agreed to share equally any winnings they might derive from the Megabucks ticket. On March 15, 1986, their ticket was chosen as the winning ticket. They decided that Gerald should immediately sign the back of the ticket to "preclude any problems of ownership of the ticket." According to Welford's affidavit, she had certain financial problems that she wanted to resolve before acknowledging ownership of the winning lottery ticket.

Also, according to the affidavits, on March 17, 1986, Welford and Gerald were told by the lottery commission that the lottery commission's regulations allowed only one person to be issued a winner's check. Welford and Gerald decided to have the first check, for 1986, made payable to Gerald. Gerald signed the ticket. He then delivered the winning ticket to the lottery commission. At the lottery commission, Welford

---

[3]Nancy has moved this court to strike the depositions and stipulation, arguing that they were filed after the Superior Court judge granted summary judgment in October, 1987. We deny this motion. The judge was free to consider additional materials on file when she reconsidered summary judgment in January, 1989. See *Riley* v. *Presnell*, 409 Mass. 239, 242 (1991).

and Gerald completed tax forms indicating that they were equal co-owners of the lottery winnings. In May, 1986, pursuant to the advice of a lottery commission employee, Welford and Gerald established a trust with themselves as equal beneficiaries and with the Connecticut River Bank as trustee. They assigned their rights to future lottery payments to the trust and they directed the lottery commission to pay future proceeds to the trust.

The uncontroverted affidavits establish for summary judgment purposes that Gerald purchased the winning lottery ticket for himself and Welford as legitimate co-owners pursuant to their prior understanding. The affidavits do not warrant a contrary inference. Specifically, the affidavits do not permit the inference that, after Gerald won the lottery, he and Welford conspired to reduce his "take" in order to defeat potential claims by Nancy or the children. As a result, not only do the affidavits fail to establish for summary judgment purposes that Gerald was ever the sole owner of the ticket, but also they affirmatively show without contradiction that the winning ticket was owned jointly by Welford and Gerald from the beginning, that Welford and Gerald were entitled to share equally in the proceeds, and that the trust they executed was valid and enforceable.

Nothing turns on the fact that Gerald alone signed the lottery ticket. Neither the State lottery statute, G. L. c. 10, §§ 22-36 (1990 ed.), nor regulations, 961 Code Mass. Regs. §§ 2.00 et seq. (1985), provide that the holder of a winning ticket, whose signature appears on it, is the sole owner of the ticket and alone is entitled to the proceeds. At the time the ticket involved in this case was drawn, regulation 2.39 provided in relevant part: "Until such time as a name is imprinted or placed upon the portion of the lottery ticket so designated for such purpose, a lottery ticket shall be considered in bearer form and thereby owned by the person in physical possession of said ticket. The Commission need not recognize or give credence to any claims that a winning lottery ticket was stolen if in bearer form. *The Commission need only recognize as the true owner of a winning lottery*

*ticket the person whose signature appears upon the ticket in the area designated for said purpose. . . .* The Commission shall make payment in complete reliance of the information submitted to it on the claim form and winning ticket. In the event that there is an inconsistency in the information submitted on the claim form and as shown on the winning ticket, the Director shall make an investigation and withhold all winnings awarded to the ticket owner until such time as he is satisfied that the winnings are paid to the proper person. Regardless of any other provisions herein contained, the Commission may rely on the name of the owner, his address and other information contained on the claim form although apparently inconsistent with the ticket, and pay all winnings to said ticket owner or his proper representative according to Law and these Rules and Regulations without further responsibility and liability. The Commission *for its purposes* will recognize only one (1) person as owner of a ticket. . . .

"If a trust is used as a payee of the winnings or if a legal entity is the owner or payee, the Federal employee taxpayer's number must be submitted in writing on the claim form." (Emphasis added.) 961 Code Mass. Regs. § 2.39 (1985). The obvious purpose of regulation 2.39 is to limit the lottery commission's liability for payment on a stolen ticket. The regulation provides that "[t]he Commission for its purposes" in making payment will recognize only one person as owner of a ticket, and that person may be the person whose signature appears on the ticket or on the claim form. The regulation does not speak to the question whether, as between Welford and Gerald, or as between Nancy and Gerald, Gerald was the sole owner of the ticket entitled to the entire proceeds. Indeed, it is clear from the several documents available to the judge in January, 1989, including the affidavits, lottery commission stipulation, and lottery employees' depositions, that the lottery commission routinely acknowledged joint ownership of winning lottery tickets although "for its own purposes" it formally recognized only one owner when it paid the proceeds. An agency's interpretation of its own regulation

is accorded considerable deference. *Warcewicz* v. *Department of Envtl. Protection*, 410 Mass. 548, 550 (1991).

General Laws c. 10, § 28 (1990 ed.), provides: "No right of any person to a prize shall be assignable, except that payment of any prize may be made to the estate of a deceased prize winner, and except that any person pursuant to an appropriate judicial order may be paid the prize to which the winner is entitled, and except that the commission may, by regulations adopted pursuant to section twenty-four, permit assignment of prizes for purposes of paying estate and inheritance taxes, or to a trust the beneficiary of which are the prize winner, his mother, father, children, grandchildren, brothers, sisters, or spouse. Neither the commission nor the director shall be liable for the payment of a prize pursuant to this section."

The judge was of the view, and the defendants argue, that the trust established by Welford and Gerald with the Connecticut River Bank to receive the lottery proceeds for the equal benefit of Welford and Gerald was unlawful because G. L. c. 10, § 28, permits assignment of prizes to a trust only when the beneficiaries are the prize winner or his family, and Welford was neither a prize winner nor a member of Gerald's family. We do not agree because, as the uncontradicted affidavits state, and as we hold, the prize winners were Welford and Gerald equally. Therefore, the beneficiaries of the challenged trust were the prize winners.

Lastly, we very briefly address Welford's appeal from the dismissal of her claim against Connecticut River Bank on jurisdictional grounds. Technically, that appeal is not moot although as a practical matter Welford may now have little reason to pursue her claim against the bank. We affirm the order dismissing the bank. Our review of the record satisfies us that Welford did not establish in the Superior Court that the bank, which has no office, mailing address, telephone listing, or employees in Massachusetts, had transacted business in Massachusetts within the meaning of the Massachusetts long-arm statute, G. L. c. 223A, § 3 (*a*) (1990 ed.). The bank neither solicited business in Massachusetts nor main-

tained an ongoing business relationship with a Massachusetts resident. The trust document was executed in New Hampshire and administered there. There is nothing in the record to show any acts or omissions by the bank allegedly having taken place in Massachusetts. Jurisdiction has not been established.

The summary judgment in favor of Nancy Nobrega and Mr. Thomas Wirtanen is reversed. The declaration that Gerald Nobrega was the sole owner of the lottery ticket is set aside. We reverse the order denying summary judgment to Jacqueline Welford and Gerald Nobrega and remand to the Superior Court for the entry of a judgment declaring that Jacqueline Welford and Gerald Nobrega are equal co-owners of the lottery prize money and that their trust naming Connecticut River Bank as trustee is valid. We affirm the dismissal of the claim against Connecticut River Bank. We also dismiss as moot Jacqueline Welford's appeal from the denial of her motion to intervene in the Probate and Family Court.

*So ordered.*