EMMA HARRISON *vs.* BOSTON FINANCIAL DATA SERVICES, INC.

No. 93-P-653.

Norfolk. April 13, 1994. - August 15, 1994.

Present: BROWN, SMITH, & FINE, JJ.

*Practice, Civil*, Summary judgment. *Anti-Discrimination Law*, Prima facie case, Employment, Race. *Employment*, Discrimination.

On the record of an action alleging employment discrimination based on race, summary judgment was incorrectly entered in favor of the employer where the plaintiff had set forth sufficient facts to establish a prima facie case of unlawful discrimination, unmet by countervailing materials. [136-139]

CIVIL ACTION commenced in the Superior Court Department on August 5, 1991.

The case was heard by *Andrew G. Meyer*, J., on a motion for summary judgment.

*Winston Kendall* for the plaintiff.

*Colette Manoil* for the defendant.

BROWN, J. This is an appeal from a grant of summary judgment for the defendant, Boston Financial Data Services, Inc. (BFDS). All the materials that were before the motion judge are also before us on appeal.[1] Cf. *Pilch* v. *Ware*, 8 Mass. App. Ct. 779, 780 (1979). Contrast *Cambridge Hous. Authy.* v. *Civil Serv. Commn.*, 7 Mass. App. Ct. 586, 588 (1979). On review of this record, we have little difficulty con-

---

[1]In this posture, for purposes of our review, we look at a trial judge's decision to allow a motion for summary judgment, albeit useful, as a "nondispositive prelude."

cluding that the judge erred in allowing the defendant's motion for summary judgment.[2]

The plaintiff, Emma Harrison, an African-American woman, was employed as a "microfilmer" by BFDS in December, 1984, under a contract at will. According to her verified complaint, she intended to remain with BFDS on a long-term basis, and she anticipated promotions and salary increases. In January, 1986, after one year with the company, an evaluation by her supervisor rated her as effective (i.e., "good") in the position, and her supervisor further indicated that she desired more challenging job tasks and should be allowed to perform other duties.[3] The evaluation also indicated that she was interested in being promoted. In March, 1986, she was moved "laterally" to the position of "correspondence control clerk." As of the summer of 1990, the plaintiff had received annual merit salary increases but had received no promotions. Nor had she received any in-house training (with the exception of a five-hour stress management workshop in February, 1989) since September, 1988. See note 13, infra.

In July, 1990, Harrison took a short-term disability leave,[4] until September, 1990. When Harrison returned to the company in September, she was informed verbally that her former position had been eliminated. While a new position of "accounts specialist" had been created that comprised many

---

[2]"Here we must be mindful that in cases involving a state of mind, where credibility of witnesses may be important, summary judgment may be inappropriate." Welford v. Nobrega, 30 Mass. App. Ct. 92, 99 (1991), S.C., 411 Mass. 798 (1992). See also Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991) ("where motive, intent, or other state of mind questions are at issue, summary judgment is often inappropriate").

[3]Harrison received similar ratings in every successive year, except her last full year, when the evaluator's comment was "meets requirements."

[4]By way of explanation, the plaintiff averred in her verified complaint, and repeated in an affidavit, that when she "came to realize that [her] future with the defendant was bleak and that [she] would probably not be promoted . . . [she] became depressed and frustrated" and, as a result, experienced such intense "pain in my joints . . . at work . . . so as to incapacitate [her]." The defendant, however, points to evidence in the record contrary to the plaintiff's assertion that her short-term disability leave was work-related.

of her former duties, as well as some additional responsibilities, BFDS did not offer Harrison this position, nor even make her aware of its existence. She maintains that she was fully capable of performing the duties associated with the "new" position,[5] an assertion for which no dispute appears in the materials before the trial judge. On October 15, 1990, BFDS hired a white female to fill the position of accounts specialist. While the record does not reflect the basis upon which the new person was hired or what her qualifications were, we note that 180 persons held the accounts specialist position at BFDS.

On October 1, 1990, Harrison filed a complaint with the Massachusetts Commission Against Discrimination (MCAD), alleging discrimination based on race, color, and age (Harrison was fifty-four at the time her position was eliminated).[6] Some time after the charge was filed with the MCAD, Harrison was offered a position as "mail opener" at a different facility of BFDS, a gesture that it fairly may be inferred was a veiled attempt to nullify her discrimination claim. That position carried essentially the same duties as her previous position, which the defendant had informed her had been abolished. She did not accept the offer.

In August, 1991, Harrison filed a verified complaint alleging violations of State and Federal statutes: G. L. c. 151B, § 4; 42 U.S.C. § 1981 (1988); and 29 U.S.C. §§ 621 et seq. (1988), and requested a trial by jury. After discovery, BFDS's motion for summary judgment, filed in September, 1992, was allowed in December, 1992.[7]

---

[5] The defendant is estopped from making an argument that the new accounts specialist position required a degree by the deposition testimony of its manager, Ms. DiVivo, who stated "[i]t didn't require [a degree]."

[6] Deciding as we do, we do not reach the age discrimination claim.

[7] The judge stated, in allowing the motion, that "[a]lthough it appears that plaintiff has filed a claim with the Mass. Comm. against Discrimination pursuant to G. L. c. 151B, § 4, it is not apparent that plaintiff has exhausted that remedy. See *Sereni* v. *Star Sportswear Mfg. Corp.*, 24 Mass. App. Ct. 428, 429 (1987)." The plaintiff is correct in her contention that the judge's invocation of the *Sereni* case is misplaced. See G. L. c. 151B, § 9. The court in *Sereni* did not impose an exhaustion requirement; rather, *Sereni* stands for the proposition that a timely complaint

Summary judgment is appropriate where there is an absence of genuine dispute as to any material fact and the moving party is entitled to summary judgment as matter of law. Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). See *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 808-809 (1991), and cases cited. Our review of the grant of summary judgment in favor of the defendant requires us to assume the truth of all the facts set forth in all the materials the plaintiff properly presented to the Superior Court judge, as well as to give her the benefit of any favorable inferences that may be drawn from those materials. *Welford* v. *Nobrega*, 30 Mass. App. Ct. 92, 94 (1991), *S.C.*, 411 Mass. 798 (1992).

Following the *McDonnell Douglas* framework,[8] Harrison's verified complaint[9] and materials in support of her opposition to summary judgment establish a prima facie case of unlawful discrimination: (1) she is a member of a protected class; (2) she was qualified for the position of correspondence control clerk (as well as its newly created successor position); (3) despite her qualifications, she was not considered for the successor position; and (4) her job having been eliminated, she was effectively replaced with a white woman who had her qualifications. See *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802 (1973); *Wheelock College* v. *Massachusetts Commn. Against Discrimination*, 371 Mass. 130, 135 & n.5

---

must be filed with the MCAD before a plaintiff can proceed with an action in the Superior Court. See, e.g., *Brunson* v. *Wall*, 405 Mass. 446, 452 (1989). Harrison is *not* required to exhaust administrative remedies under the Federal statute. *Melley* v. *Gillette Corp.*, 19 Mass. App. Ct. 511, 512-513 (1985), *S.C.*, 397 Mass. 1004 (1986). See also *Cherella* v. *Phoenix Technologies Ltd.*, 32 Mass. App. Ct. 919 (1992).

[8]The Supreme Court of the United States held in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802 (1973), that a complainant could establish a prima facie case of racial discrimination by showing "(i) that [s]he belongs to a racial minority; (ii) that [s]he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite [her] qualifications, [s]he was rejected; and (iv) that, after [her] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."

[9]"Only if the plaintiff files a verified complaint is the complaint treated as an affidavit for purposes of rule 56(e)." *Godbout* v. *Cousens*, 396 Mass. 254, 262 (1985).

(1976). See also *Radvilas* v. *Stop & Shop, Inc.*, 18 Mass. App. Ct. 431, 439-440 (1984). The exact prima facie proof required can vary depending on the factual situation. *Wheelock College* v. *Massachusetts Commn. Against Discrimination, supra* at 135 n.5. *Radvilas* v. *Stop & Shop, Inc., supra* at 439.

BFDS argues that Harrison failed to make out a prima facie case of discrimination because she was not in fact terminated.[10] Rather, BFDS asserts that Harrison took a disability leave with full knowledge that her job might not exist when she returned,[11] thereby entitling the defendant to summary judgment as matter of law. We do not agree.

In addition to the ample basis set out in her verified complaint, Harrison submitted deposition testimony and excerpts from the employee manual that describe the efforts (or lack thereof) of BFDS in dealing with issues of racial discrimination[12] in an attempt to demonstrate that the reasons given for eliminating Harrison's job and not hiring her for the new position were a pretext. *Smith College* v. *Massachusetts Commn. Against Discrimination*, 376 Mass. 221, 230 (1978). In addition, Harrison asserted that she was not provided with the training and educational opportunities rou-

---

[10]At oral argument, BFDS cited a "corporate restructuring" during plaintiff's absence as the basis for eliminating her job; however, it failed to address that issue adequately in its brief. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). This argument is presumably advanced as the defendant's "legitimate nondiscriminatory reason" for the elimination of Harrison's position to rebut a prima facie case of unlawful discrimination. *Smith College* v. *Massachusetts Commn. Against Discrimination*, 376 Mass. 221, 229 (1978).

[11]Harrison signed a "short-term disability leave agreement" which stated, "I further understand th[at] I am not guaranteed a position with the Company upon return from my leave."

[12]For example, the record indicates that BFDS had no affirmative action plan, nor had it posted on its premises any notices which would inform African-American employees of the existence of a process or mechanism whereby they could register complaints concerning discriminatory treatment. The record also contrasts the experience of a white woman employee in terms of the training and education she received and promotional opportunities provided her by BFDS.

tinely accorded white employees,[13] nor was she made aware of BFDS's policy of paying tuition costs for employees who sought to enhance their knowledge and skills in order to take advantage of promotion opportunities. The defendant never performed an evaluation of Harrison's skills, let alone offered her the new position or even administered the requisite tests (which were minimal) for that position. Nor was she provided an opportunity to present her career aspirations. Inferentially, this treatment of the plaintiff contributed to the atmosphere of unlawful discrimination. Nothing has been made to appear by BFDS to counter either these materials or her assertions. Contrast *Brunner* v. *Stone & Webster Engr. Corp.*, 413 Mass. 698, 703-705 (1992).

BFDS claims that Harrison did not apply for any other job, and therefore could not have been impermissibly rejected based on race. While it is not clear whether Harrison ever actually applied for a promotion, that is not fatal to the plaintiff's prima facie case. Passing the issue raised by the hiring of the white female, we need to look no further than to the deposition testimony of Maureen DeVivo, who began in 1983 as a secretary to the manager of BFDS's human resources department and has risen to the position of group manager of employee relations and benefits. DeVivo stated therein that BFDS had no formal program for soliciting (or accepting) applications for promotion or for promoting employees. She went on to say that there existed an informal, subjective mechanism for hiring and promoting employees outside the formal system of job postings. Such subjective conditions have been acknowledged as suspect by a number of courts, deserving of close scrutiny "because of their capacity for masking unlawful bias." *Sklenar* v. *Central Bd. of Educ. of Sch. Dist.*, 497 F. Supp. 1154, 1160 (E.D. Mich. 1980), quoting from *Davis* v. *Calitano*, 613 F.2d 957, 965 (D.C. Cir. 1980). Moreover, where, as here, the complainant-employee was not offered the so-called new position or even made aware that the particular job opening existed, a

---

[13]As stated in its employment manual, it is BFDS's policy to provide training to its employees designed to strengthen their performance.

fact finder reasonably could infer that discriminatory practices prevented even awareness of the opportunity. See *Rodgers* v. *Peninsular Steel Co.*, 542 F. Supp. 1215, 1299 (N.D. Ohio 1982).

In conclusion, we think that the plaintiff's verified complaint sets forth sufficient facts to establish a prima facie case of unlawful discrimination and that she has shown by material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, sufficient information for a fact finder to find (1) that the plaintiff, a member of a racial minority group, had in fact been terminated (or denied promotion), and (2) that the reason proffered by the defendant for treating Harrison in such a manner was a pretext. See *Talbert Trading Co.* v. *Massachusetts Commn. Against Discrimination, ante* 56, 63 (1994), and cases cited.

*Judgment reversed.*