Alvin TERRY

v.

### ELECTRONIC DATA SYSTEMS CORPORATION.

### Civil Action No. 95–11562–WGY.

United States District Court,
D. Massachusetts.

Sept. 10, 1996.

---

Robert A. Rossi, Cambridge, MA, for plaintiff.

Robert P. Joy, Morgan, Brown & Joy, Boston, MA, Charles A. Linn, Office of the General Counsel, Plano, TX, for defendant.

## MEMORANDUM OF DECISION

YOUNG, District Judge.

### I. Introduction

This employment discrimination action arose out of Plaintiff Alvin Terry's ("Terry") application for permanent employment with Defendant Electronic Data Systems Corporation (the "Corporation"), a corporation headquartered in Texas, with business facilities at several locations in Massachusetts. Relying upon Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–2(a)(1), and Mass. Gen.L. ch. 151B, § 4(1),[1] Terry claimed em-

---

1. Title VII and Mass.Gen.L. ch. 151B, § 4(1) read in relevant part as follows, respectively:

It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual ... because of such

**380**

ployment discrimination on the basis of race and sought damages, attorneys' fees and costs, and any other relief deemed appropriate by this Court.

The Corporation filed a motion for summary judgment under Fed.R.Civ.P. 56 on the grounds that there are no genuine issues of material fact and that the Corporation is entitled to judgment in its favor as matter of law. For the reasons stated below, this Court granted summary judgment to the Corporation with respect to both federal and state employment discrimination claims.

## II. Background

Taking the undisputed facts of record and drawing all inferences in favor of Terry, *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36 (1st Cir.1995); *Moody v. Boston & Maine Corp.*, 921 F.2d 1, 5 (1st Cir.1990), the following picture emerges: From January through May, 1992, Terry, an African-American, worked at the Corporation as a temporary entry-level computer operator through Systemp, a temporary employment agency. In May, 1992, upon the suggestion of his supervisor, William Pistorino ("Pistorino"), Terry applied and interviewed with the Corporation for a permanent position created to replace the temporary position he previously filled. Upon Pistorino's personal recommendation, Sharirar Moin ("Moin"), Manager of Information Services, offered Terry a permanent position, contingent upon a background investigation consisting of a drug screen and a credit check. Moin Aff. ¶ 7.

Shortly thereafter, Moin learned that Terry's background check came back "cleared derogatory"[2] due to a credit problem related to an outstanding $800.00 student loan. Defendants' Statement of Undisputed Material Facts ("Defendant's Statement") ¶ 13. Moin telephoned Terry to discuss the delinquent loan. After speaking to Terry for several minutes, Moin, unsatisfied with Terry's ex-

planation of the delinquency, concluded Terry was unreliable and instructed Betty Moore ("Moore"), a Corporation employee, to rescind the job offer. Before Moore called Terry to revoke the job offer, she called the Corporation's corporate headquarters for instructions and a statement of what she should tell Terry. Moore made a written record of what she was told to say:

> Your background check revealed some derogatory information concerning your credit history. The hiring manager has been informed of this fact, and based on a thorough review of the situation, has decided not to extend an offer of employment to you at this time. The information that surfaced in your background is incompatible with [the Corporation's] codes and policies, and it is for this reason that we are unable to extend an offer of employment to you.

Terry's Opposition to Motion for Summary Judgment ("Terry's Opposition"), Ex. 10.

In addition, Moin alleged that he denied employment to a white applicant, Greg Aucoin ("Aucoin"), due to Aucoin's delinquent child support payments. Moin Aff. ¶ 13.

Although Terry never had any disagreements with Moin, Terry felt that, in general, Moin's tone of voice when speaking with him indicated that something was strained or uncomfortable. Defendant's Statement ¶ 5. On one prior occasion when Terry called Moin to discuss an unrelated matter, Terry got the impression that Moin was being condescending. *Id.* These separate encounters led Terry to believe that he was the victim of employment discrimination based on race.

On October 14, 1992, Terry filed a complaint with the Massachusetts Commission Against Discrimination (the "Commission") alleging that, on June 24, 1992, the Corporation denied him employment because of his

individual's race, color, religion, sex or national origin[.] 42 U.S.C.A. § 2000e–2(a)(1) (1994).

It shall be an unlawful practice for an employer, by himself or his agent, because of the race, color, religious creed, national origin ... of any individual to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such indi-

vidual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification. Mass.Gen.Laws Ann. ch. 151B, § 4(1) (West 1996).

2. The term "cleared derogatory" is used to refer to a background investigation that revealed credit problems. Giffen Aff. ¶ 5.

race. Complaint ¶ 6. On or about May 31, 1995, the Commission dismissed the complaint stating that its investigation of Terry's complaint "did not reveal sufficient evidence of an unlawful act of discrimination." Complaint ¶¶ 7–8. Terry subsequently filed a complaint in the Massachusetts Superior Court sitting in and for the County of Suffolk. The Corporation removed the case to this Court.

### III. Summary Judgment Standard

Summary judgment is properly granted where the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law. Fed.R.Civ.P. 56(c). *See also Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993); *Lawrence v. Northrop Corp.* 980 F.2d 66, 68 (1st Cir.1992). The moving party must show an absence of evidence to support the case of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). That done, the burden then falls on the nonmoving party to establish the existence of at least one factual issue that is both "genuine" and "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A "genuine" issue is one that properly can be resolved by a reasonable jury in favor of the nonmoving party; a "material" issue is one that affects the outcome of the suit under the governing law. *Id.* at 248, 106 S.Ct. at 2510.

Even in discrimination cases, where motive is often an issue, "the plaintiff cannot survive summary judgment with 'unsupported allegations and speculations,' but rather must 'point to specific facts ... giving rise to an inference of discriminatory animus.'" *Hoeppner v. Crotched Mountain Rehabilitation Center, Inc.*, 31 F.3d 9, 14 (1st Cir.1994) (quoting *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 895 (1st Cir.1988)).

### IV. Disparate Treatment Analytical Framework

The Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), estab-

lished an allocation of the burden of production and an analytic sequence for the proof of discrimination in Title VII discriminatory treatment cases. This analytic approach, as further explained by the Supreme Court in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) and, most recently, in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 2751–52, 125 L.Ed.2d 407 (1993), has proved difficult in application by the lower courts. This difficulty, it seems to me, could be clarified by direct recognition of the fact that the Supreme Court, in each of the seminal cases just cited, is actually doing nothing more than practically applying the law of presumptions as set forth in Fed.R.Evid. 301. Moreover, since Massachusetts law likewise proscribes discrimination, and this case—like most such actions today—includes a state claim in parallel to the federal, it may help to set out the analytic framework wholly in evidentiary terms.

Listed below are the evidentiary relationships in civil cases between the proof of certain facts—here called "basic facts," and other facts—here called "resultant facts:"

■ *Inferences.* An inference is that relationship between a basic fact and a resultant fact where proof of the basic fact permits, but does not require, the factfinder to find the resultant fact.

■ *Presumptions*—sometimes called "true" or "rebuttable" presumptions. A presumption is that relationship between a basic fact and a resultant fact where proof of the basic fact requires the factfinder to find the resultant fact unless credible evidence is introduced which tends to rebut the resultant fact. In this latter instance, the presumptive force of proving the basic fact disappears and the factfinder is left to draw such inferences as may be reasonable.

■ *Prima facie evidence*—called in federal courts "presumptions of the middle ground." Prima facie evidence is that relationship between a basic fact and a resultant fact where proof of the basic fact requires the factfinder to find the resultant

fact unless credible evidence is introduced which tends to rebut the resultant fact. In this latter instance, however, unlike a presumption, the evidentiary force of prima facie evidence does not disappear and the trial judge will instruct the jury to consider such evidence with all the other evidence in the case and "accord it such weight as the jury sees fit to give it."

■ *Conclusive relationships based on social policy*—sometimes called "conclusive" or "irrebuttable" presumptions. These are relationships between a basic fact and a resultant fact deemed so necessary to the implementation of some social policy that proof of the basic fact conclusively establishes the resultant fact and even credible evidence tending to rebut the resultant fact is to be accorded no weight. Should the basic fact be undisputed, evidence tending to rebut the resultant fact will be inadmissible.

■ *The rule of deference to legislative fact-finding*—sometimes called the presumption of constitutionality. Statutes, ordinances, and regulations falling within a statutory mandate which need only pass a "rational basis" test rather than a "strict scrutiny" test are upheld and enforced notwithstanding undisputed evidence of their ineffectiveness, deleterious consequences, or general lack of wisdom so long as some rational basis for the enactment can be found by the reviewing court. No actual evidence that this hypothetical "rational basis" ever occurred to the drafters of the enactment need be proffered.

Mass.Evid.Std. 301 (West 1995) (emphasis and footnotes omitted).

The interplay of these various concepts is best illustrated—indeed, it has its most vital application today—in all types of discrimination cases, especially those arising in the context of alleged employment discrimination. In this context, the principles already discussed apply as follows:

With minor variations dependent upon the type of discrimination alleged and the requisite statutory framework, the plaintiff must present sufficient evidence of each of the requisite basic elements such that the fact finder could properly make a finding in the plaintiff's favor.[3] This evidence constitutes the "basic fact". If the plaintiff establishes the "basic fact," then the fact finder is instructed to presume the resultant fact of prohibited discrimination unless the defendant proffers evidence of a legitimate, non-discriminatory reasons for the job action in question. This is just another way of saying that once the plaintiff bears the burden of production sufficient to establish the basic fact, then the burden of going forward with rebutting evidence falls on the defendant.[4] The bur-

---

**3.** In general, "the plaintiff [must] first demonstrate that he or she is in the protected class and *is qualified to perform the task at issue, but was* nonetheless subjected to an adverse employment decision." J. Adkins et al, Employment Law (West Pub. Co. 1995) § 8.25 p. 368. See *Wheelock College v. Massachusetts Comm'n Against Discrim.*, 371 Mass. 130, 138, 355 N.E.2d 309, 314 (1976), adopting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Blare v. Husky Injection Molding Sys. Boston Inc.*, 419 Mass. 437, 646 N.E.2d 111 (1995). *Brunner v. Stone & Webster Eng'g Corp.*, 413 Mass. 698, 700, 603 N.E.2d 206, 208 (1992), setting forth requisite facts necessary to make out a case of sex discrimination in violation of M.G.L.A. c. 151B.

*Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 429 (1st Cir.1996), a plaintiff can establish the "basic fact" of pregnancy discrimination by showing that (1) she is pregnant (or has indicated an intention to become pregnant), (2) her job performance has been satisfactory, but (3) the employer nonetheless dismissed her from her position (or took some other adverse employment action against her) while (4) continuing to have her duties performed by a comparably qualified person. Establishing the "basic fact" raises a rebuttable presumption that discrimination sparked the adverse employment action, and imposes upon the employer a burden to put forward a legitimate, non-discriminatory motive for the action. If the defendant clears this modest hurdle, the presumption of discrimination vaporizes, and the plaintiff (who retains the ultimate burden of persuasion on the issue of discriminatory motive throughout) must then prove that the employer's proffered justification is a pretext for discrimination.

**4.** *Smith College v. Massachusetts Comm'n Against Discrim.*, 376 Mass. 221, 230, 380 N.E.2d 121, 126 (1978). *Wheelock College*, 371 Mass. at 136, 355 N.E.2d at 313.

den of persuasion, of course, remains on the plaintiff throughout.[5]

In a discrimination case, if the defendant produces no rebutting evidence, the jury is instructed that, if they believe the mix of requisite facts that constitute the "basic fact" then they shall presume that prohibited discrimination motivated the job action in question. If, however, the defendant has proffered competent evidence that a legitimate, non-discriminatory reason motivated the job action in question, then the bubble of the presumption bursts and nothing whatsoever will be said further about any presumption. The plaintiff is left to prove the prohibited discrimination from the circumstantial evidence available, unaided by any presumption.[6]

Thus far, this is fairly straightforward. What happens, however, if the supposedly legitimate non-discriminatory reason proffered by the defendant as motivating the job action is challenged by the plaintiff as untrue? In such a case, the decisions of the United States Supreme Court and the Massachusetts Supreme Judicial Court diverge sharply. The federal approach in such cases displaces the presumptive effect of proving the basic fact and replaces it with an inference, whose strength will vary with the circumstances of the individual case. In contrast, the Supreme Judicial Court has declared that the social policy on Massachusetts is such that proof of the "basic fact" plus proof of a sham justification for the questioned job action, without more, conclusively establishes prohibited discrimination.

Federal causes of action are controlled by *St. Mary's Honor Center v. Hicks*.[7] Under *St. Mary's Honor*, whatever the challenge by the plaintiff to its veracity, so long as the defendant's rebuttal evidence is competent and would support a finding that there existed a legitimate nondiscriminatory reason for the job action, then the bubble will burst and the law of presumptions drops out of the case. True, the fact that a defendant has advanced a false reason for the job action will give rise to a permissive inference of discrimination but, standing alone, this may not be enough to take the case to the jury.[8] That is, where a plaintiff proves the "basic fact" of adverse job action and proves that the reason advanced by the defendant for that action was untrue, the action may nevertheless fail unless (1) the circumstances warranting finding the "basic fact" also warrant a finding of prohibited discrimination, or (2) there is evidence that the defendant's sham reason for the job action is a cover for prohibited discrimination, or both.

State causes of action are governed by *Blare v. Husky Injection Molding Systems Boston, Inc.*[9] The Supreme Judicial Court reasoned that proof of the basic fact, combined with a showing of pretext, "eliminates any legitimate explanation for the adverse [job] decision and warrants a determination that the plaintiff was the victim of unlawfully [sic] discrimination. The plaintiff need not conclusively exclude all other possible explanations for the deci-

---

5. *Wheelock College*, 371 Mass. at 139, 355 N.E.2d at 315.

6. See e.g. *Fontaine v. Ebtec Corp.*, 415 Mass. 309, 315 n. 8, 613 N.E.2d 881, 886 n. 8 (1993), plaintiff satisfied his burden of production where evidence was sufficient to demonstrate "that, but for his age, more likely than not, he would not have been discharged." (citation omitted).

7. 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (Scalia, J.).

8. See *Smith v. Stratus Computer, Inc.*, 40 F.3d 11 (1st Cir.1994), affirming summary judgment for employer where employee presented evidence of pretext but did not produce sufficient evidence that the employer's acts were discriminatory.
*LeBlanc v. Great American Ins. Co.*, 6 F.3d 836 (1st Cir.1993), *cert. denied* —— U.S. ——, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994), summary judgment for defendant affirmed where plaintiff presented insufficient evidence of pretext to create genuine issue of material fact.
*Barbour v. Dynamics Research Corp.*, 1994 WL 568877 (D.Mass.1994), granting summary judgment for employee on ERISA claim even though employee introduced evidence showing employer's stated reason for its actions was false.
Compare *Troy v. Bay State Computer Group, Inc.*, 1994 WL 562591 (D.Mass.1994), denying summary judgment for employer where evidence of falsehood permitted inference of discriminatory animus.

9. 419 Mass. 437, 646 N.E.2d 111 (1995) (Abrams, J., writing for full seven judge court).

sion." [10] Thus the Supreme Judicial Court established a conclusive relationship between pretext and unlawful discrimination in such cases. The Court makes this clear by holding "that, once a plaintiff has established [the basic fact] and further shows either that the employer's articulated reasons are a pretext or by direct evidence that the actual motive was discrimination, the plaintiff is entitled to recovery for illegal discrimination." [11] In sum, absent direct evidence of discrimination, once the basic fact is proved, "if the fact finder concludes that the plaintiff has proved that the employer's reasons are a pretext, then the plaintiff prevails. If the fact finder concludes that the plaintiff did not prove pretext then the defendant prevails. Direct proof of discrimination is not required." [12]

Just how dramatic is the difference between the federal and state approaches is best illustrated in the summary judgment context. Consider the following illustration:

It is undisputed that the plaintiff has proved the basic fact, *i.e.*, membership in a protected class, satisfactory job performance, and an adverse job decision. Likewise, it is undisputed that the defendant has advanced a legitimate non-discriminatory reason for the adverse job decision. There is, however, a genuine dispute between the plaintiff and the defendant concerning whether the defendant's proffered reason is the truth (as the defendant contends) or a pretext for some other reason (as the plaintiff contends).

As to federal causes of action, the bubble of the presumption that stems from proof the basic fact bursts and the law of presumptions drops out of the case, to be replaced by a possible inference of discrimination should the fact finder find the reason advanced by the defendant to be pretextual. Against a defendant's motion for summary judgment, the presiding judge will draw this and all other reasonable inferences in favor of the plaintiff. Still, the plaintiff's federal cause of action will fall to the summary judgment axe unless, on the entire record, there is something more than speculation that the pretextual reason advanced by the defendant is actually a cover for prohibited discrimination.

As to the state causes of action, however, summary judgment can never be granted in the circumstances limned above. Since, in Massachusetts, once the basic fact has been established, there is a conclusive relationship between pretext and discrimination such that proof of the former requires finding the latter, a genuine dispute over pretext prevents the grant of summary judgment.

William G. Young, et al., *Massachusetts Evidence*, 19 Mass.Prac.Series § 301.12 (West Pub. Co. forthcoming 1997) (footnotes and citations included).

The dichotomy posited in the text of the treatise is well illustrated by two recent cases.

In *McMillan v. Massachusetts Society for the Prevention of Cruelty to Animals*, 880 F.Supp. 900 (D.Mass.1995) (Stearns, J.), the plaintiff alleged wage discrimination on the basis of her gender under both Title VII and Mass.Gen.L. ch. 151B. *Id.* at 900. She provided as evidence a statistical analysis which supported an inference that, contrary to her employer's contention, seniority, budget size, and the number of employees supervised did not *mathematically explain pay differences* among employees at her company. *Id.* at 908. The court held that this evidence, while sufficient to impeach the credibility of her employer and show his reasons to be pretextual, did not permit a jury to find that her employer's true motivations were discriminatory, and denied summary judgment on the Chapter 151B claim while granting summary judgment on the Title VII claim. *Id.* at 907–08. Thus, courts allow some claims of discrimination under Chapter 151B to reach a jury that would not survive summary judgment if brought under Title VII.

So, too, *Foster v. Dalton*, 71 F.3d 52, 56 (1st Cir.1995), which affirmed a judgment for

---

**10.** 419 Mass. at 446, 646 N.E.2d at 117.

**11.** 419 Mass. at 444–45, 646 N.E.2d at 117.

**12.** 419 Mass. at 446, 646 N.E.2d at 117.

defendant where a federal district judge found cronyism rather than racial discrimination to be behind the proffer of a sham reason for an employment decision. In *Foster*, the plaintiff conceded that under federal law "a court is not legally bound to find for a ... plaintiff simply because it rejects an employer's proffered reason for an employment decision." *Id.* at 56. After *Blare*, of course, this is precisely what a court interpreting chapter 151B **must** do if the "basic fact" is proven.[13]

## V. Analysis

### A. Proving the "Basic Fact"

In a Title VII employment discrimination case, the plaintiff must establish a *prima facie* case of racial discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824 (1973). To establish this *prima facie* case, *i.e.*, to prove the "basic fact," Terry must demonstrate the following: i) that he belongs to a racial minority; ii) that he applied and was qualified for a job for which the employer was seeking applicants; iii) that, despite his qualifications, he was rejected; and iv) that, after his rejection, the position remained open and the employer continued to seek applicants. *Id.*; *St. Mary's Honor*, 509 U.S. at 515, 113 S.Ct. at 2751–52.

██ Looking at the requirements for proving the "basic fact," it is undisputed that Terry satisfies the first and fourth elements. He belongs to a racial minority and the position he applied for was eventually filled. Regarding the second and third elements, however, the Corporation argues that Terry was not qualified for the computer operator position because he did not pass the background investigation. Throughout this argument, the Corporation interprets "qualified" broadly to include not only job skills, but also the ability to pass a background investigation.

Terry signed a document acknowledging the fact that the job offer was contingent on passing the background check. Terry's Opposition, Ex. 2. The Corporation thus argues that, because Terry cannot establish that he passed the background investigation, he was not qualified for the position and therefore fails to prove the "basic fact."

Terry contends that the "basic fact" cannot be disputed. He points to the evidence showing that he was well qualified for the job, noting his five months' tenure at the Corporation prior to his application for permanent employment, along with the fact that his supervisor, Pistorino, recommended him for the permanent position.[14]

This Court rules that Terry succeeds in establishing the "basic fact" for three reasons. First, "[t]he burden of establishing a *prima facie* case of disparate treatment [*i.e.*, establishing the 'basic fact'] is not onerous." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1094.[15] Under the standard enunciated in *Burdine*, the fact that Pistorino recommended Terry for the job based on Terry's work as a temporary contractor for five months is sufficient to establish that Terry was qualified for the position.

Second, passing the background check was merely a condition precedent, not a qualification for the permanent position at the Corporation. The conditional language in the application reads: "any offer of employment is contingent on the completion of a satisfactory background investigation, drug screen, and verification of employment eligibility." Terry's Opposition, Ex. 3. An applicant's inability to pass the background investigation may preclude that applicant from obtaining the position, even though he or she may be qualified for the job.

13. In *Foster*, no claim under chapter 151B was raised, as the action was commenced in Rhode Island. Moreover, as the action was against the Secretary of the Navy, the counter-party Rhode Island statute was not invoked, apparently because that federal official would not have been subject to it.

14. Terry claims that he did not fail the background check, only that he "cleared derogatory". Terry's Opposition at 9.

15. Furthermore, the Court in *McDonnell Douglas* stated that the *prima facie* requirements are not rigid but should be flexibly construed based on each individual case. *McDonnell Douglas*, 411 U.S. at 802, n. 13, 93 S.Ct. at 1824, n. 13 ("The facts necessarily will vary in Title VII cases and the specification above of the *prima facie* proof required from respondent is not necessarily applicable in every respect to differing factual situations.").

■ Third, in passing Title VII, Congress placed on the employer the burden of showing that any given requirement has a manifest relationship to the employment in question. *Griggs v. Duke Power Co.*, 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971). The validity of a requirement must be supported by a "meaningful study of [its] relationship to job-performance ability." *Id.* at 431, 91 S.Ct. at 853; *see also Castro v. Beecher*, 459 F.2d 725, 735 (1st Cir.1972).[16] Here, the Corporation fails to show that a clean background check, albeit a prerequisite to employment, correlates with Terry's job performance. On the contrary, the fact that Terry did perform for five months as a computer operator at the Corporation indicates that the background check has little bearing on Terry's job performance.

Thus, this Court rules that Terry succeeds in establishing the "basic fact" and the presumption of discrimination arises.

## B. Rebuttal

■ The burden of production now shifts to the Corporation to set forth a non-discriminatory reason for denying Terry employment, *i.e.*, to rebut the resultant fact. To meet its burden of production, a party must introduce "evidence which, if taken as true, would permit the conclusion that there was a non-discriminatory reason for the adverse action." *St. Mary's Honor*, 509 U.S. at 509, 113 S.Ct. at 2748. The Corporation explained that when Moin called Terry to give him a chance to explain the circumstances surrounding the delinquent loan, Terry refused to explain his failure to repay the loan. Moin Aff. ¶ 10. Moin alleges that Terry seemed unconcerned and unremorseful about its repayment. *Id.* Thus, based on Terry's failure to explain why he had not repaid the loan, coupled with his lack of concern and

remorse about the delinquent loan, Moin decided to revoke the offer of employment to Terry. *Id.* at ¶ 11.

The Corporation thus has presented, "'through the introduction of admissible evidence,' reasons for its actions which ... would support a finding that unlawful discrimination was not the cause of [denying permanent employment]."[17] *St. Mary's Honor*, 509 U.S. at 507, 113 S.Ct. at 2747 (quoting *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094). By proffering this explanation, the Corporation meets its burden of production under the *McDonnell Douglas* test. The bubble that is the presumption of discrimination thus bursts and the presumption drops out of the case, not to be heard of again.

## C. Pretext

■ At this point Terry is left with circumstantial evidence of discrimination. To bolster his case, he tries to show that the reason given for revoking the job offer was actually a pretext for some other, underlying reason. If he succeeds in demonstrating a genuine issue on this point, the Court will consider, as to the federal claim, whether the evidence of pretext, when combined with the other circumstances favoring Terry are sufficient to go to the jury, *i.e.*, to allow a reasonable factfinder to conclude that the corporation engaged in prohibited discrimination as to Terry. *See Stratus*, 40 F.3d at 16. As to the state claim, of course, the situation is much different. If Terry demonstrates a genuine issue exists as to pretext, then summary judgment **must** be denied because, if Terry proves pretext (having already established the "basic fact" herein), then the resultant fact—prohibited discrimination—will be taken to be conclusively established. *See Blare*, 419 Mass. at 444–45, 646 N.E.2d at

---

16. Unlike the case at hand, the requirements at issue in *Griggs* and *Castro* had a disparate impact on a protected class. Despite the Corporation's allegation that the background check has not had a disparate impact on blacks, the language in *Griggs* and *Castro* is persuasive, though not binding.

17. In his opposition memo, Terry attempts to raise a factual dispute with respect to his phone conversation with Moin. Contrary to Moin's allegation that Terry refused to explain the delin-

quent loan, Terry maintains that he clearly indicated to Moin that he had not paid the student loan due to financial reasons. Terry argues that, contrary to Moin's allegation of Terry's lack of remorse, Terry did express concern about repaying the loan and was not evasive when Moin asked about the student loan. There is no record of this telephone conversation. This dispute is not relevant because the Corporation has a burden of production, not a burden of persuasion.

117. In short, Terry will win on the state claim.

Terry attempts to show pretext with the written record that Betty Moore created when she called Terry to inform him his offer had been revoked. *See* Statement of Facts, *supra*, at 3–4. Terry argues that the fact that Moore felt compelled to make such a note reveals that she had concerns about who would bear responsibility for what she was about to do and demonstrates that the Corporation's articulated reason is pretext.

Terry fails, however, to show that the Corporation's articulated reason for revoking the job offer was pretextual because he presents no concrete evidence, but rather offers vague, subjective impressions to support his claim. Examples of Terry's impressions include Moin's tone of voice and his alleged condescending attitude towards Terry. Terry Dep. at 234–237. Moreover, the Corporation reserved the right to terminate employment at will and to deny employment due to an unsatisfactory background investigation. Terry knew that his offer was contingent on a satisfactory background investigation.

Had Terry shown evidence of the Corporation extending offers to other applicants with "cleared derogatory" results, the dispute over the telephone conversation could have created a genuine issue of material fact. *Brennan v. Nat'l Tel. Directory Corp.*, 881 F.Supp. 986, 994 (E.D.Pa.1995) (evidence of management's inconsistent responses to requests for accommodations submitted by men and women helped defeat defendant's summary judgment motion). Other evidence Terry could have raised to show pretext include, without limitation, the following: the employer's general practice and policies concerning employment of those within the protected category, *see Blare*, 419 Mass. at 447, 646 N.E.2d at 118 (citing *Lewis v. Area II Homecare for Senior Citizens, Inc.*, 397 Mass. 761, 767, 493 N.E.2d 867 (1986)); testimony of former employees or applicants regarding specific instances of discrimination, *see Brennan*, 881 F.Supp. at 994; or other evidence of specific instances of disparate treatment, *Brennan*, 881 F.Supp. at 994.

Here, however, in the absence of such evidence, Terry cannot avert summary judg-ment. *Woods v. Friction Materials, Inc.*, 30 F.3d 255, 260 (1st Cir.1994); *see also Grant v. News Group Boston, Inc.*, 55 F.3d 1, 7 (1st Cir.1995); *cf. Harrison v. Boston Fin. Data Services, Inc.*, 37 Mass.App.Ct. 133, 638 N.E.2d 41 (1994) (holding that concrete evidence of disparate treatment created issues of fact as to whether employer's reasons were pretextual, thus precluding summary judgment). This Court holds that Terry's unsupported allegations of discrimination, Moore's written notes, and the dispute over the content of the telephone conversation are insufficient for Terry to survive summary judgment on either the Title VII or the Chapter 151B claim.

## VI. Conclusion

Although Terry succeeded in proving the "basic fact" in this case of alleged disparate treatment, he failed to raise a genuine issue of material fact as to whether the Corporation's non-discriminatory reason was pretextual. Therefore, as to both his federal and state claims he was left with a circumstantial case so weak that no reasonable factfinder could, without speculation, conclude that he was the victim of racial discrimination. For this reason, this Court granted the Corporation's summary judgment motion with respect to both federal and state employment discrimination claims.